# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**LINDA ECKERT BALLARD**,

     Plaintiff,

v.                                           **Civ. No. 10-886 JCH/WDS**

**THE GEO GROUP, INC.;**
**GEORGE C. ZOLEY, CEO and Founder The GEO Group, Inc.,**
**personal and professional capacity;**
**WAYNE H. CALABRESE, CEO and Vice-President: GEO Group,**
**Inc., personal and professional capacity;**
**MIKE MARTIN, Warden the GEO Group, Inc., Northeast**
**New Mexico Detention Facility, personal and professional capacity;**
**TIMOTHY B. HATCH, Warden the GEO Group, Inc., Northeast**
**New Mexico Detention Facility, personally and professionally;**
**JOHNNY JOHNSON, Deputy Warden the GEO Group, Inc., Northeast**
**New Mexico Detention Facility, personally and professionally;**
**LIEUTENANT GRAYSON, Lieutenant: the GEO Group, Inc., Northeast**
**New Mexico Detention Facility, personal and professional capacity;**
**DEBORA VEGA-COWAN, employee the GEO Group, Inc., Northeast**
**New Mexico Detention Facility, personal and professional capacity,**

     Defendants.

## ORDER GRANTING IFP and REQUIRING THE FILING OF AN AMENDED COMPLAINT[1]

     THIS MATTER comes before me on pro-se Plaintiff Linda Eckert Ballard's Motion to

Proceed *in forma pauperis* ("IFP"), filed September 21, 2010, *see* Doc. 2, and on my concomitant

obligation "to review the affidavit and screen her case under 28 U.S.C. §§ 1915(a) and (e)." *Lister*

*v. Dep't of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005). "[I]n order to succeed on a motion to

proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as

---

[1] Within fourteen (14) days after a party is served with a copy of this Order, that party may, pursuant to 28 U.S.C. § 636(b)(1), request reconsideration by the district judge. A party must file any request for reconsideration within the fourteen-day period if that party wants to have appellate review of the Order. If no request for reconsideration is filed, no appellate review will be allowed.

the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Id.* at 1312.

To support her motion to proceed IFP, Ballard must show that she is unable to pay filing fees and still provide herself "with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). It appears that Ballard, whose expenses for necessities are close to her disability income, may meet that financial standard. But because Ballard has failed to state sufficient facts to state a claim against certain Defendants and has included counts that fail to state cognizable claims, I conclude that she must file an amended Complaint before free service of process is ordered.

## I.      Allegations in the Complaint.

Ballard seeks to sue the GEO Group, Inc., a private company that apparently manages and operates the Northeast New Mexico Detention Facility ("NNMDF") through a contract either with a county or with the state of New Mexico, along with its founder and CEOs. She also names two "wardens" and three officers/employees at that facility. She asserts a right to relief under both 42 U.S.C. § 1983 and under state law for various torts. *See* Complaint at 1.

Ballard was arrested on the morning of September 20, 2008, and subsequently held in the NNMDF. *Id.* She complains that, although she told everyone "with whom she came into contact" that she was disabled and could not sit or stand for long periods and took "regular medication for severe back pain," she was initially placed "for a very long time" in a cold shower area with no place to sit except the floor. *See id.* at 2, 18. Employees refused to give Ballard her prescription pain medication for back pain, and she suffered "severe pain." *See id.* After Ballard began singing hymns, Officer Grayson told her to "to be quiet," which Ballard interprets as "prevent[ing her] from practicing her religious freedom." *Id.* at 2. Around 7:00 p.m., Ballard was booked and

fingerprinted, and required to change into a prison uniform. *See id.* at 3. She was then placed in a regular cell and given two blankets. *See id.* Defendant Vega-Cowan came into the cell with another woman and "tried to be overly friendly" to Ballard. *Id.* When Ballard expressed no interest "in their company," the women left. *Id.* at 4. Ballard "received and signed release papers," releasing her "upon her own recognizance" around 8:30 p.m. *Id.* at 2.

But instead of bringing Ballard her clothing and releasing her, unnamed employees took her to an "isolation cell in the infirmary" that had a large window. *Id.* at 4. A female employee ordered Ballard to remove all of her clothing, including her underwear, while a group of male guards stood in front of the window "gawking at" her. *See id.* at 4-5. Employees gave her a "u-haul packing blanket [that] came to above the knees" with velcro straps to hold it on, and she was left in the cell all night "to freeze." *Id.* at 5. At around 11:00 a.m. the next day, she was given prison clothing and taken to a hospital thirty miles away by ambulance, escorted by three police squad cars and a fire department truck with flashing lights and blaring sirens. *See id.* Ballard contends that the parade-like escort was used solely to embarrass her and to ruin her credibility. *See id.* Because she had her release papers in hand, once she reached the hospital, Ballard got up and began to walk away. Defendant Grayson and some other officers ran after her and threatened to prosecute her if she "stole their prison uniform." *Id.* at 6. Ballard went into the hospital, "in GEO's custody," to wait for someone to bring her clothing and was later driven back home. *Id.* But GEO failed to return Ballard's money to her for over a month, leaving her with no money until October 1. *See id.* at 6. The criminal charges against Ballard were dropped. *See id.* at 7.

## II.   Pleading Standards.

In the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009), courts must carefully scrutinize a plaintiff's complaint to

determine if an actionable claim is asserted.  In *Twombly*, the Court noted that the pleading standard of FED. R. CIV. P. 8 does not require "detailed factual allegations," 550 U.S. at 555, but the Rule demands more than an unadorned "the defendant-unlawfully-harmed-me" account, *see Iqbal*, 129 S. Ct. at 1949.  The Supreme Court warned against pleadings that offer "labels and conclusions" or "a formulaic recitation of the elements of the cause of action . . . ."  These, the Court stated, "will not do." *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

The courts should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted.  First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth."  *Id.* at 1951.  Then it only "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.*; *see id.* at 1954 (rejecting the plaintiff's argument that he sufficiently stated a claim for relief by generally alleging that the defendants "discriminated against him 'on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" and stating, "[w]ere we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss.  But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.") (citations omitted).

Complaints brought under § 1983 must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (internal quotation marks omitted).  The Tenth Circuit recently applied the *Twombly* and *Iqbal* standards to a prison-conditions case brought under § 1983, making the following observations:

4

> Nowhere in the law does context have greater relevance to the validity of a claim
> than prisoner civil-rights claims.  Prisons are a unique environment, and the Supreme
> Court has repeatedly recognized that the role of the Constitution within their walls
> is quite limited.  Government conduct that would be unacceptable, even outrageous,
> in another setting may be acceptable, even necessary, in a prison.  Consequently, a
> prisoner claim will often not be plausible unless it recites facts that might well be
> unnecessary in other contexts.  For example . . . a prisoner claim may not be
> plausible unless it alleges facts that explain why the usual justifications for the
> complained-of acts do not apply.

*Gee v. Pacheco*, ___ F.3d ___, ___, 2010 WL 4196034, *4 (10th Cir. 2010).  When a prison-

conditions complaint is deficient, "a careful judge will explain the pleading's deficiencies so that

a [pro se] prisoner with a meritorious claim can then submit an adequate complaint." *Id.* at *5.

### III.   **Ballard must amend her Complaint**.

Here, although Ballard has stated sufficient facts to potentially state several viable claims

(at least on their face), *see Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (noting that

pretrial detainees are entitled to the same protection regarding prison conditions under the Due

Process Clause as convicted prisoners are afforded under the Eighth Amendment), there are several

deficient claims that Ballard must either amend or delete from an amended complaint before the

Court will order free service of process on the Defendants.

First, Ballard has listed GEO's founder, CEOs, and wardens as Defendants, but she states

no facts to show that any of these individuals had any personal involvement or participation in any

of the alleged wrongdoings.  While Ballard may bring a cause of action against GEO for failure to

train its employees, *see, e.g., Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (noting that, when

a private entity contracts to provide inmate services, it becomes the functional equivalent of a city

and, therefore, may be liable under § 1983 if it violates its own policy or custom; but it is not liable

under a *respondeat superior* doctrine), it has long been held that individual liability under § 1983

must be based on personal involvement or participation in the alleged constitutional violation.  *See*

*Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).   The Tenth Circuit recently held that

> [a] plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating:  (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation. . . .  § 1983 liability [may] only be imposed upon those defendants whose own individual actions cause a constitutional deprivation because it requires plaintiffs [to] prove each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation.

*Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010).  Unless she can state additional facts to connect Defendants Zoley, Calabrese, Martin, Hatch, and Johnson with direct or indirect participation in the alleged violations as stated above, Ballard must delete these individuals as Defendants.

Further, Ballard has set out three counts that do not appear to form the basis for judicial relief either in state or federal law.  Count IV alleges a "conflict of interest" by Vega-Cowan because any information Vega-Cowan thought she knew about Ballard was privileged.  Complaint at 12.  Ballard states that other unnamed GEO employees had a conflict of interest because of undescribed "relationship[s]" with Ballard's family.  *Id.*   I am not aware of any cognizable cause of action for "conflict of interest" and, therefore, on its face, Count IV fails to state a claim upon which relief may be granted and must be deleted from an amended complaint.

Count IX is for "collusion and conspiracy" between unnamed GEO employees to "discredit" Ballard.  Again, I am unaware of any cognizable claim or cause of action for a conspiracy to discredit someone, and this Count fails to state a claim for relief.

Count X is for "sexual discrimination."  Complaint at 20.  Although Ballard makes a conclusory statement that she "was treated differently than any male detainee" "because of her sexual orientation," *id.*, she fails to state any specific facts to support that conclusion.  Accordingly,

under *Iqbal* and *Gee*, she has failed to allege sufficient facts to state a cognizable claim for sexual discrimination.

If Ballard fails to file an amended complaint, I will recommend that her case be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).  *See Trujillo v. Williams*, 465 F.3d 1210, 1217 n. 5 (10th Cir. 2006) (noting that dismissal of deficient complaints that have been filed without prepayment of filing fees is now mandatory).

**IT IS ORDERED** that the motion to proceed IFP (Doc. 3) is GRANTED; and that Ballard shall file an amended complaint that comports with above findings of deficiencies within fourteen days of the filing of this Order.

_____
UNITED STATES MAGISTRATE JUDGE